# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JANICE D. BENSON,

                Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

                Defendant.

Case No. 22-CV-550-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff Janice D. Benson ("Plaintiff") seeks to reverse the Commissioner of Social Security's (the "Commissioner") decision denying her benefits pursuant to the Social Security Act, 42 U.S.C. § 405(g). The parties have submitted their briefs on the matter. ECF Nos. 13, 14, 15. Upon review of the entire record, and with the benefit of the parties' arguments, the Court finds that the Commissioner's decision must be reversed and remanded to the Social Security Administration for further proceedings.

## 2. BACKGROUND

### 2.1 Legal Framework for Social Security Disability Claims

To be eligible for disability benefits under the Social Security Act, a claimant must be deemed "disabled" by the Social Security Administration (the "SSA"). 42 U.S.C. § 423(a). In most cases, to determine whether a claimant is disabled within the meaning of the Act, an administrative law judge ("ALJ") gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claim. 20 C.F.R. § 404.1520.

The ALJ must determine whether: (1) the claimant is engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable physical or mental impairment"; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing her past relevant work in light of her residual functional capacity ("RFC"); and (5) the claimant, considering her age, education, work experience, and RFC, can still perform another job that is available in the national economy. *Id.*

A claimant's RFC is an assessment of the most a claimant is able to do, notwithstanding her physical and mental limitations. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). According to Social Security Ruling ("SSR") 96-8p, the RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities" in a work setting for eight hours per day, five days a week, or an equivalent work schedule. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[1] It entails "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

---

[1]The SSA publishes SSRs that "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.*

## 2.2 Procedural Background

Plaintiff applied for disability benefits in January 2020. ECF No. 13 at 1. Plaintiff alleged that she became disabled on December 6, 2019, the date of a ST-elevation myocardial infarction ("STEMI"). *Id.* ALJ William Shenkenberg ("ALJ Shenkenberg") held a hearing on July 13, 2021, where Plaintiff and a vocational expert ("VE") testified, after which ALJ Shenkenberg issued an unfavorable decision on October 14, 2021. *Id.*; ECF No. 12-1 at 14–22.[2]

As pertinent to this Order, at step two, ALJ Shenkenberg found that Plaintiff has the following severe impairments: "coronary artery disease status-post stenting, right carpal tunnel syndrome, lumbar degenerative disc disease, right knee degenerative joint disease, and obesity." ECF No. 12-1 at 17. At step four, ALJ Shenkenberg found that Plaintiff has the RFC to perform light work, "except only occasional stooping, kneeling, crouching, crawling, and climbing," and that she "can frequently handle, finger, and feel with the right dominant arm." *Id.* at 18–22. Based on this RFC assessment, ALJ Shenkenberg concluded that Plaintiff had the ability to perform at least some of her past relevant work. *Id.*

The appeals council denied Plaintiff's appeal on March 18, 2022. *Id.* at 1–4. On May 9, 2022, Plaintiff filed a timely complaint in this Court seeking review of ALJ Shenkenberg's decision. ECF No. 1.

---

[2] ECF No. 12-1 is the administrative transcript in this action. The Court's citations to the administrative transcript refer to the pagination in the lower right corner of the administrative transcript, in lieu of the ECF pagination, for consistency with the parties' briefing.

## 3. LEGAL STANDARD

A district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). The Social Security Act provides that a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security and remand the cause for a rehearing. *Id.* However, the statute also states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A court will uphold the Commissioner's decision if it is supported by substantial evidence and does not contain legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Substantial evidence is evidence that a reasonable person would accept as adequate to support the decision. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). A court determines whether the decision is supported by substantial evidence by reviewing the entire record, but it cannot substitute its judgment for that of the ALJ by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Id.* "Although this standard is generous, it is not entirely uncritical . . . ." *Steele*, 290 F.3d at 940. A court must look to whether the ALJ articulated an "accurate and logical bridge from the evidence to his conclusion" that the court can follow. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Ultimately, the Court must remember that "it is not intended to be a rubber-stamp on the Commissioner's decision." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

4.  **ANALYSIS**

Plaintiff argues that ALJ Shenkenberg erred by failing to account for the "total limiting effects" of her impairments in formulating the hypothetical RFCs presented to the VE, which includes the RFC he ultimately found at step four. ECF No. 13 at 2. As a result, she contends that the VE testimony is unreliable. *Id.* at 6.

At her hearing, Plaintiff testified that she performed past relevant work as a dispatcher/driver, a personal care worker, a hospital cleaner, a daycare driver, and an apartment cleaner. ECF No. 12-1 at 55. The VE classified the dispatcher/driver as a composite role: the driver role was medium work as defined and performed, and the dispatcher job was sedentary work as defined and medium work as performed. *Id.* at 56. The personal care worker job is medium work as defined and heavy work as performed. *Id.* at 56–57. The hospital cleaner job and the daycare driver job are both medium work as defined and as performed. *Id.* at 57. The apartment cleaner job is light as defined and medium as performed. *Id.*

ALJ Shenkenberg presented several hypothetical RFCs to the VE. The first was an individual with the ability to perform "the full range of medium work as defined," except they "could frequently climb ramps or stairs, ladders, ropes or scaffolds, stoop and crawl," "occasionally kneel and crouch," and "frequently handle, finger and feel objects with the right dominant extremity." *Id.* at 60. The VE testified that this individual could do all of Plaintiff's past relevant jobs except the personal care worker job as performed.

The second was an individual with the ability to perform "the full range of light work as defined by the regulations except that this person could occasionally climb ramps or stairs, ladders, ropes or scaffolds, stoop,

Page 5 of 16
Case 2:22-cv-00550-JPS   Filed 04/27/23   Page 5 of 16   Document 16

kneel, crouch and crawl" and "frequently handle, finger and feel objects with the right thumb and extremity." *Id.* at 61–62. The VE testified that this individual could not perform any of Plaintiff's past relevant work, except the apartment cleaner job as defined and as generally performed, "but not as actually performed by [Plaintiff]." *Id.* at 62. This was the RFC ultimately adopted by ALJ Shenkenberg at step four, where he decided that Plaintiff had the ability to perform some of her past relevant work; namely, the apartment cleaner or "housekeeper" job. *Id.* at 18, 22.

ALJ Shenkenberg further questioned the VE as to several points. The VE testified that either an additional limitation of being off task 15% or more of the time or missing two or more days of work would be work preclusive. *Id.* at 62–63. Plaintiff did not acquire any skills that would transfer to sedentary work. *Id.* at 63. An individual who could lift 20 pounds for less than 2.6 hours per workweek would be precluded from Plaintiff's past relevant work. *Id.* at 64. An individual who can stand for less than two hours in an eight-hour day would be precluded from Plaintiff's past relevant work. *Id.*

ALJ Shenkenberg based his light work RFC finding in large part on the fact that Plaintiff's testimony contradicted her objective medical records. ECF No. 12-1 at 18–22. At her hearing, Plaintiff testified that she has severe shooting pain in her back that never goes away, and she cannot sit or stand for long. *Id.* at 38. Her symptoms became worse after her heart attack in 2019. *Id.* at 50. Her right fingers lock and get stuck, so she is unable to keep a grip and frequently drops her glasses. *Id.* at 38. Plaintiff can do housework for 20 minutes before needing to sit for a 30-minute break. *Id.* at 39. Plaintiff can stand for 10 minutes at a time, can ascend three stairs at a time before needing a break, and can walk 15 to 20 feet before needing a

break. *Id.* at 40, 51. Plaintiff cannot pick up or carry a gallon of milk. *Id.* at 40. Plaintiff does not do any shopping or laundry, needs help getting out of the tub, and needs to sit down to get dressed. *Id.* at 40–41. Plaintiff rides her stationary exercise bike for 15 minutes twice a week. *Id.* at 53. Plaintiff also suffers from constant spasms in her knees. *Id.* at 52. In a typical day, Plaintiff reads and does a little cooking. *Id.* at 53. Plaintiff uses prescribed medication and "Bio Freese" to aid her symptoms. *Id.* at 39.

Conversely, ALJ Shenkenberg noted that Plaintiff's medical records show denial of active symptoms, "such as chest pain, chest pressure, unusual shortness of breath, or loss of stamina." ECF No. 12-1 at 18. A December 2019 echocardiogram revealed some "normal" results. *Id.* at 19. An October 2019 knee x-ray also revealed "unremarkable findings" and Plaintiff later showed "normal range of motion without tenderness." *Id.* Records showed Plaintiff had stable coronary artery disease in January 2020. *Id.* An electromyograph and an echocardiogram from 2021 showed "largely normal" findings. *Id.* Two state medical consultants found Plaintiff capable of performing the full range of medium work. *Id.* at 20–21.

In light of this evidence, ALJ Shenkenberg found the opinions of Dr. Daryl Melzer ("Dr. Melzer"), Dr. Matthew Richlen ("Dr. Richlen") (Plaintiff's treating physician),³ and Dr. Firas Ghanem ("Dr. Ghanem"), as well as Plaintiff's subjective testimony set forth above, either "minimally

---

³Parenthetically, ALJ Shenkenberg did not abide by the treating physician rule. *See Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) ("When controlling weight is not given, an ALJ must offer 'good reasons' for doing so" after considering factors set forth in 20 C.F.R. § 404.1527(c)) (citation omitted). Because the parties did not brief this issue, however, the Court will not further address it.

somewhat persuasive" or "unpersuasive."[4] *Id.* at 21; *see also id.* at 20 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."). As to Dr. Melzer, ALJ Shenkenberg found his functional limitations belied by treatment records showing mild cardiac findings, nearly full grip strength, and normal gait. *Id.* ALJ Shenkenberg found Dr. Richlen's opinion about Plaintiff's strength limitations unsupported, again by observations of a normal gait and stable cardiac function. *Id.* Dr. Ghanem's opinion that Plaintiff remain off work until she underwent cardiac rehabilitation was also unpersuasive given later notes of stable cardiac function. *Id.*

The Court agrees with Plaintiff that ALJ Shenkenberg failed to account for the total limiting effects of Plaintiff's impairments both in his written decision and in formulating his RFCs. To his credit, and in addition to his hypothetical RFCs of medium and light work, ALJ Shenkenberg questioned the VE regarding an individual who is off task 15% of the time, an individual who misses two days of work each month, and an individual with lifting and standing limitations. However, ALJ Shenkenberg did not account for Plaintiff's carpal tunnel syndrome, as well as many of her other symptoms as documented in the medical records. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant

---

[4]The Commissioner argues that Plaintiff has waived any argument "that the ALJ erred in evaluating the medical opinion evidence." ECF No. 14 at 5 n.3. The Court disagrees. Plaintiff argued that many objective medical findings, including those by Dr. Richlen and Dr. Melzer, are consistent with her testimony, and that the ALJ did not "reasonably" find to the contrary. ECF No. 13 at 7–9. These arguments took up two pages of Plaintiff's brief, and the argument is not waived.

medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.").

As noted, Plaintiff's carpal tunnel syndrome and grip issues are documented. *See, e.g.*, ECF No. 12-1 at 586–88, 553; *cf. Equitz v. Kijakazi*, No. 20-C-1072, 2021 WL 3743626, at *5 (E.D. Wis. Aug. 5, 2021) ("As to Plaintiff's complaints of chronic pain in both knees and the left foot, the ALJ noted that there are *no* x-rays or scans establishing the existence or extent of any knee or foot impairments.") (emphasis added). Nonetheless, ALJ Shenkenberg did not include them in any hypothetical, nor did he explain why these symptoms result in Plaintiff being able to frequently handle, finger, and feel objects with her right hand. ALJ Shenkenberg further did not include the following objective/observed symptoms: (1) an individual with constant back pain, *id.* at 349, 415, 553; (2) an individual who requires the option to sit or stand every 30 minutes, *id.* at 551–53, 712; (3) an individual with knee spasms, *id.* at 415, 552, 555, 714; (4) an individual with chest pain, which presents similar to STEMI pain even after a STEMI, *id.* at 693; or (5) an individual who cannot climb stairs, *id.* at 551.

To be sure, in RFC hypotheticals, "the ALJ [is] only required to incorporate limitations that [he] found supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016) (ALJ conducted fulsome analysis of the claimant's testimony and daily activities to assess whether effects or impairments were exaggerated, and only those limitations that were supported were posed in RFC hypotheticals). However, in this case, at least some of the disregarded medical evidence is reasonably consistent

with Plaintiff's testimony. But because ALJ Shenkenberg cherry picked only benign portions of the medical records, he was able to swiftly discredit Plaintiff. More fundamentally, because ALJ Shenkenberg did not identify all of Plaintiff's limitations and symptoms, he was unable to adequately explain why they should not be incorporated into the RFCs. *See Gulley v. Kijakazi*, No. 20-CV-1545-SCD, 2021 WL 7628061, at *9 (E.D. Wis. Nov. 17, 2021) (quoting *Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.")).

The plainest issue is that, unlike in *Alvarado*, ALJ Shenkenberg's written opinion is largely devoid of analysis other than of the cherry-picked medical records. "The Social Security regulations set forth a two-step process for evaluating a claimant's statements about the symptoms allegedly caused by his impairments." *Equitz,* 2021 WL 3743626, at *4 (citing 20 C.F.R. § 404.1529). First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or symptoms alleged." *Id.* (quoting 20 C.F.R. § 404.1529(a)). If so, the ALJ next evaluates the "intensity and persistence" of the claimant's symptoms to determine "the extent to which [the claimant's] symptoms limit [her] capacity for work." *Id.*; 20 C.F.R. § 404.1529(c)(1).

ALJ Shenkenberg's written decision focuses on the second step. ECF No. 12-1 at 18. In general, when conducting the two-step inquiry, the ALJ must consider "all of [the claimant's] statements about [her] symptoms, such as pain," but "statements about . . . pain or other symptoms will not alone establish [disability]." 20 C.F.R. § 404.1529(a). Instead,

> [t]here must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical

impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [her] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [she is] disabled.

20 C.F.R. § 404.1529(a). At the second step, the ALJ considers both objective medical evidence and "other" evidence:

> However, [the ALJ] will not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements.
>
> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account.

20 C.F.R. § 404.1529(c)(2)–(3).

Factors pertinent to the analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) dose, effectiveness, and side effects of any medications; (5) other treatment received; (5) other measures used to relieve pain ("e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board"); and (6) other factors. 20 C.F.R. § 404.1529(c)(3). Also at the second step, when determining "the extent" to which symptoms affect capacity to work, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

As described above, portions of the objective medical record (i.e., medical observations and lab results) that were not cherry picked by ALJ Shenkenberg are reasonably consistent with Plaintiff's testimony and subjective descriptions of her symptoms to her doctors. Even if they were not, however, ALJ Shenkenberg's written opinion is severely lacking.

Initially, ALJ Shenkenberg resorts to the "common, but regrettably Delphic, observation" that Plaintiff's statements are "not entirely consistent with the medical evidence and other evidence in the record." *Mandrell v. Kijakazi*, 25 F.4th 514, 517 (7th Cir. 2022); ECF No. 12-1 at 20. He then proceeds to analyze the cherry-picked medical records described above as well as one example of one § 404.1529(c)(3) factor. The Commissioner's brief confirms the error; in arguing that ALJ Shenkenberg adequately considered the § 404.1529(c)(3) factors, two of the three considerations that the Commissioner lists are objective medical records. ECF No. 14 at 12. While objective medical evidence is part of the analysis, a fulsome review of the additional factors is necessary to make a clear (in)consistency determination. Indeed, the regulations specifically instruct that objective medical evidence shall not be the sole basis to reject a claimant's testimony. 20 C.F.R. § 404.1529(c)(2)–(3).

Yet that is essentially what ALJ Shenkenberg did. ALJ Shenkenberg does not discuss Plaintiff's activities, medications, treatment, methods to relieve pain, or any portion of her testimony in granular fashion—with two exceptions. ALJ Shenkenberg notes, with no record citations, that Plaintiff can engage in "daily exercise." ECF No. 12-1 at 20. This contradicts or, at best, inflates the record. ALJ Shenkenberg also cites one medical record to support that Plaintiff was able to shop without symptoms in January 2020, 18 months prior to her hearing. *Id.* at 19 (citing *id.* at 475).

Even if these two notes sufficed with regard to the § 404.1529(c)(3) analysis, it is not enough for an ALJ to simply refer to activities in the abstract and leave it for the reader to ponder what about those activities is inconsistent with the medical evidence, or how much weight the ALJ gave the activities relative to the medical evidence. The ALJ must thread the needle; ALJ Shenkenberg did not. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility,[5] but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence.") (internal citation omitted); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) ("This court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding.").

In *Skarbek*, the ALJ listed several daily activities to which the claimant testified and matched them to the available medical records to identify inconsistencies. *Id.* at 505; *see also Titles II & XVI: Evaluation of Symptoms in Disability Claims,* SSR 16-3P, 2017 WL 5180304, at *6, *10 (S.S.A. Oct. 25, 2017) ("If we cannot make a . . . decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record" but "[i]t is . . . not enough . . . simply to recite the factors . . . The determination or decision must contain specific reasons for

---

[5]The SSA has eliminated the word "credibility" from the pertinent sub-regulatory policy, but "[w]hether or not the SSA chooses to use the word 'credibility,' statements by the claimant concerning the intensity, persistence, and limiting effects of his or her impairments that are inconsistent with the medical and other evidence in the record need not be accepted by the ALJ in reaching a decision." *Priessnitz v. Berryhill*, No. 17-C-372, 2018 WL 1136100, at *4 (E.D. Wis. Mar. 1, 2018).

the weight given to the individual's symptoms . . . ."). While an ALJ need not consider every detail of every factor, to complete a "careful" analysis, the ALJ must "acknowledge[] and consider[] the relevant evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) (ALJ appropriately considered § 404.1529(c)(3) factors where he, among others, described a hefty list of the claimant's daily activities, identified the scope of the claimant's symptoms, and noted her medications); *see also Crockett v. Saul*, No. 20-CV-992-SCD, 2021 WL 2527028, at *10 (E.D. Wis. June 21, 2021) (affirming where the claimant "has not pointed to an entire line of evidence that the ALJ ignored" and the ALJ "sufficiently articulate[d] his assessment of the evidence to assure us that [he] considered the important evidence [and enabled] us to trace the path of [his] reasoning").

The Court does not reweigh the evidence; it instead holds that the opinion insufficiently describes and analyzes the evidence. In the oft-repeated words of many a social security appeal, ALJ Shenkenberg failed to build an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Gulley*, 2021 WL 7628061, at *7 (internal citation omitted).

The Seventh Circuit recently reversed and remanded based on similar errors. *Mandrell*, 25 F.4th at 515. There, the ALJ concluded that the plaintiff was not disabled for two main reasons. First, "he found certain parts of her testimony to be contradictory." *Id.* at 516. For example, the ALJ found it contradictory that the plaintiff said that her impairments required her to avoid being around men but that she also enjoys martial-arts training. *Id.* at 516–17 ("It appears that the ALJ's primary concern was with the severity of the problems [the claimant] described, not their existence."). Second, the ALJ credited the opinions of one doctor over another without

Page 14 of 16
Case 2:22-cv-00550-JPS   Filed 04/27/23   Page 14 of 16   Document 16

adequately explaining the basis for doing so. *Id.* at 517. For the doctor the ALJ chose to credit, the ALJ cherry picked benign medical records to use as support over records that supported the plaintiff's subjective testimony. *Id.*

Because the ALJ discredited certain testimony and evidence, the ALJ erroneously disregarded many of the plaintiff's symptoms. *Id.* at 518 ("[I]t is striking that these records are consistent with [the plaintiff's] own account of her limitations"). For example, the ALJ ignored the plaintiff's documented need to avoid men, to which she also testified, because "[n]one of the ALJ's hypotheticals envisioned a workplace free of men." *Id.* at 518. The hypotheticals also failed to "adequately connect the dots" to other symptoms the ALJ acknowledged. *Id.* The ALJ found that the plaintiff's impairments were severe, as ALJ Shenkenberg did here, but did not explain how "the deficits he acknowledged" supported "the RFC he found." *Id.*

Thus, based on the RFCs presented, "[t]he vocational expert provided testimony about the pool of jobs that would be available to a person with limitations specified in the ALJ's hypotheticals, *but the testimony was only as good as the hypotheticals—and they failed to capture the full picture.*" *Id.* (emphasis added). In this case, ALJ Shenkenberg did not adequately explain which limitations he found supported and consistent. As a result, the RFCs he presented to the VE were similarly lacking. Simply put, as in *Mandrell*, ALJ Shenkenberg's failure to document the objective *and* "other" evidence in accordance with § 404.1529(c)(3) led to hypothetical RFCs that failed to "adequately capture what [Plaintiff] could—and more to the point, could not—do." *Mandrell*, 25 F.4th at 518; *see also Timm v. Kijakazi*, No. 21-CV-131-SCD, 2022 WL 843920, at *6 (E.D. Wis. Mar. 21, 2022) (holding that process "produced a legally sufficient RFC" because the ALJ adequately explained the evidence supporting his decision "not to

Page 15 of 16
Case 2:22-cv-00550-JPS    Filed 04/27/23    Page 15 of 16    Document 16

credit the full extent of [the claimant's] subjective allegation"). Therefore, the decision of the Commissioner must be reversed and remanded.

5. **CONCLUSION**

The Court has reviewed the record, the ALJ's decision, and the parties' arguments, and it concludes that the decision of the Commissioner must be reversed and remanded for further consideration in accordance with the terms of this Order.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner of Social Security in this matter be and the same is hereby **REVERSED** as stated in the terms of this Order, and this matter be and the same is hereby **REMANDED** to the Commissioner of Social Security pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g);

**IT IS FURTHER ORDERED** that, on remand, the ALJ shall conduct proceedings consistent with this opinion and issue a new decision consistent with all applicable rules and regulations as interpreted in relevant Seventh Circuit case law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge